No. 99-643

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 262

302 Mont. 11

11 P.3d 116

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RONALD LaTRAY,

Defendant and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Montana Appellate Defenders Office,

Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Cregg W. Coughlin,

Assistant Attorney General; Helena, Montana

Thomas Meissner, County Attorney, Lewistown, Montana

Submitted on Briefs: May 25, 2000
Decided: September 28, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Ronald LaTray (LaTray) was convicted of five separate charges arising out of a hit and run incident and subsequent high-speed chase. As part of his sentence, the District Court ordered him to pay restitution for ambulance and towing fees related to this incident. LaTray appeals this order of restitution claiming that the District Court had no authority to order payment of restitution for these services. We affirm the District Court's sentencing order.

Factual Background

¶2 On April 24, 1999, LaTray was driving down U.S. Highway 87. He had been drinking and was driving with a suspended license. During the course of his drive, LaTray overtook a 1974 Jeep pickup driven by Douglas Bingeman (Bingeman) and, while attempting to pass, clipped its rear bumper. LaTray did not stop.

¶3 Since his Jeep pickup had sustained only minor damage, Bingeman drove after LaTray in an attempt to stop him or get his licence plate number. Bingeman testified at trial that he observed LaTray weaving between the shoulder and the median, sometimes crossing over into the oncoming lane of traffic. Other drivers called the police from cellular phones to report LaTray's erratic driving.

¶4 When sheriff's deputies caught up with LaTray he ignored their flashing lights and sirens and continued driving at speeds of up to 100 miles per hour. LaTray drove into a hayfield, nearly hit one of the deputy's cars and fled down a dirt road. The chase ended

when LaTray lost control of his car, went into a ditch and rolled.

¶5 Although LaTray did not appear to be seriously injured, deputies called an ambulance as a precautionary measure. They also called a tow truck to remove LaTray's overturned vehicle from the ditch and take it to Lewistown.

¶6 Because LaTray appeared to be unconscious when the ambulance crew arrived, medical personnel called for an Advanced Life Support (ALS) ambulance to meet them en route to Great Falls. Paramedics prepared LaTray for transport by immobilizing him and applying a cervical collar. After meeting the ALS ambulance, paramedics took additional measures to assess and stabilize LaTray's condition. Doctors at the hospital ultimately determined that LaTray had no significant injuries but a blood screening revealed a blood-alcohol content of .156.

## Procedural History

¶7 LaTray was charged by information with driving under the influence of alcohol, a felony; operating a motor vehicle without proof of liability insurance; operating a motor vehicle while a habitual traffic offender; leaving a vehicle accident scene; and felony criminal endangerment. He was convicted of all charges. The District Court sentenced him to ten years in prison and four years of supervised probation. In addition, the court ordered LaTray to pay restitution of $1,561.80 to Superior Towing for towing and storage fees and $317.50 to the Stanford Ambulance Service for ambulance services incurred as a result of the incident. LaTray appeals this sentence and asks this Court to strike the restitution requirement.

## Issue

¶8 Did the District Court err when it ordered LaTray to pay restitution for ambulance and towing services?

## Standard of Review

¶9 This Court reviews a criminal sentence for legality. State v. Montoya, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15. Thus, our review is confined to whether the sentence is within the parameters provided by statute. *Montoya*, ¶ 15.

## Discussion

¶10 LaTray argues that the court's statutory authority to order restitution is limited to pecuniary losses suffered by *direct victims,* defined in terms of the offense for which he was convicted. He asserts that, while the driver of the pickup struck by LaTray may be a victim, neither the towing service nor the ambulance company qualify as victims of any of the offenses of which he was convicted. He concludes, therefore, that the court exceeded its authority when it ordered him to pay restitution for these services. We disagree. LaTray's interpretation is neither implied by the plain words of the controlling statutes nor is it supported by our case law.

¶11 Our role in construing statutory language is clear. We must "ascertain and declare what is in terms or in substance contained therein . . .;" we may not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. If the intention of the legislature can be determined from the plain meaning of the words used, a court may not go further and apply other means of interpretation. State v. Curtis (1994), 266 Mont. 231, 235, 879 P.2d 1164, 1166 (citing State v. Hubbard (1982), 200 Mont. 106, 111, 649 P.2d 1331, 1333). Where the statutory language is "plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe." *Curtis*, 266 Mont. at 235, 879 P.2d at 1166.

¶12 Under Montana law, sentencing courts must order offenders to make full restitution to "*any* victim of the offense who has sustained pecuniary loss *as a result of the offense*, including a person suffering an economic loss as a result of the crime." Section 46-18-241 (1), MCA (emphasis added). The plain language of this statute does not limit restitution to victims defined in terms of the offense for which the defendant was convicted or to losses arising directly from the defendant's criminal conduct.

¶13 LaTray argues, in essence, that "any victim" means "only those victims legally related to the convicted offense" and "as a result of the offense" means "as a *direct* result of the offense." LaTray would have us interpret the word "any" as somehow restrictive or limiting. But, clearly, the term *any* is not limiting in *any* way.

¶14 In arguing that courts only have authority to require restitution for losses that occur as a *direct* result of an offense, LaTray would, again, have this Court insert a limiting term into the plain text of the statute. Admittedly, application of § 46-18-241(1), MCA, requires some interpretation of just how remote a loss can be before it can no longer be considered to be "a result of the offense." However, the fact that the language is somewhat open does not imply that "direct" losses are the only ones that qualify.

¶15 Had the legislature wished to add the limiting terms that LaTray's argument suggest, it surely could have done so. It is not our role to insert this language in a statute that is otherwise plain on its face. Section 1-2-101, MCA.

¶16 Our case law also holds that classification of an individual as a victim--for the purpose of ordering restitution--does not depend on the individual's relationship to the elements of the crime for which the defendant is being sentenced. State v. Morgan (1982), 198 Mont. 391, 402, 646 P.2d 1177, 1183. In *Morgan*, the defendant was convicted of negligent homicide following a motor vehicle accident in which two people were killed and three others injured. We affirmed the district court's order of restitution to the three injured passengers, holding that they fell within the class of persons injured by the defendant's criminal conduct. *Morgan*, 198 Mont. at 402, 646 P.2d at 1183. That is, for purposes of restitution, the victims of negligent *homicide* were not limited to those who *died* as a result of the defendant's criminal conduct. Although *Morgan* was decided before the adoption of the current statute, it interpreted identical language and we find its reasoning applicable to the case at hand. LaTray's conviction for criminal endangerment in no way limits restitution only to those he endangered.

¶17 Given the sentencing authority statutorily granted to courts, the issue in this case boils down to the question of whether the towing and ambulance services come within the following language; "victim who sustained pecuniary loss as a result of the offense, including a person suffering an economic loss as a result of the crime." Section 46-18-241 (1), MCA.

¶18 The statutory definition of "victim" states, in relevant part;

> (2)(a) "Victim" means:
>
> (i) a person who suffers loss of property, bodily injury, or death as a result of:
>
> (A) the commission of an offense.

Section 46-18-243(2)(a), MCA.

¶19 Most of our cases that apply this definition deal with situations in which the victim was the person directly harmed by the defendant's conduct. As such, they provide little authority, one way or the other, for the situation presented here; where a judge has ordered

restitution paid to a party other than the one directly injured by the offender. The two cases that address this issue are somewhat in conflict. In *Morgan*, cited above, we held that the court properly ordered restitution to surviving passengers for losses incurred as a result of the negligent homicide of their parents. *Morgan*, 198 Mont. at 402, 646 P.2d at 1183. However, in a more recent case, we held that surviving family members were not "victims" for the purpose of ordering restitution. State v. Brown (1992), 263 Mont. 223, 227, 867 P.2d 1098, 1101. In *Brown*, the defendant pled guilty to felony criminal endangerment and negligent homicide after he lost control of his vehicle and struck two pedestrians. This Court held that, although the families of the pedestrians had incurred "staggering financial losses" as a result of the accident, the court improperly ordered restitution to these families. In reaching this conclusion, the court did not analyze the statutory definition of victim as set out in § 46-18-243(2)(a), MCA. Rather, it seemed to rely on the State's concession that surviving family members could not be considered victims. *Brown*, 263 Mont. at 227, 867 P.2d at 1101.

¶20 In any case, it is not necessary to reconcile these cases here. In 1995, the legislature expanded the scope of persons entitled to receive restitution to include those "suffering an economic loss as a result of the crime." Section 46-18-241(1), MCA. That language is sufficiently broad to cover the ambulance and towing charges in this case.

¶21 Montana's restitution statute does not confine restitution to the amount by which a defendant enriches himself at the victim's expense but rather, empowers courts to impose restitution for economic loss as a result of the crime. State v. Brewer, 1999 MT 269, ¶ 21, 296 Mont. 453, ¶ 21, 989 P.2d 407, ¶ 21. In *Brewer*, the defendant embezzled funds from his employer over a number of years. Following the theft, the employer paid his employees, a software company, a locksmith and an accounting firm in excess of $15,000 in an attempt to assess and rectify the damage caused by the theft. We held that such expenditures, necessary to address and rectify the effect of the defendant's criminal acts, were "the result of the crime" and properly the subject of a restitution order. State v. Brewer, 1999 MT 269, ¶¶ 19-23, 296 Mont. 453, ¶¶ 19-23, 989 P.2d 407, ¶¶ 19-23.

¶22 Under the facts of this case, the towing and ambulance services suffered an economic loss because they incurred out of pocket expenses for which they were not reimbursed. Moreover, these expenses were a result of LaTray's criminal conduct. Regardless of whether the services were ordered by the sheriff's deputies on the scene, LaTray's criminal acts created a situation in which ambulance and towing services were reasonably necessary for public safety or for the safety of LaTray himself. The expenditures incurred

by the ambulance and towing services were a result of LaTray's crime.

¶23 We hold, therefore, that the District Court had authority under § 46-18-241(1), MCA, to order LaTray to pay restitution to the companies that provided these services.

¶24 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER