FILED

01/16/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0606

DA 21-0606

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 7N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

COREY MICHAEL KELLY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDC-2020-638
Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Haley Connell Jackson, Helena, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs: November 15, 2023

Decided: January 16, 2024

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Following trial, a jury convicted Corey Michael Kelly of mitigated deliberate homicide for the shooting death of Mark Luther (Mark). As part of Kelly's sentence, the District Court imposed $13,495 in restitution for repairs to the interior of Mark's home. Kelly appeals this portion of his sentence. We reverse and remand for recalculation of the restitution award.

¶3     In the early morning of November 20, 2020, deputies with the Lewis and Clark County Sheriff's Department responded to a reported shooting at a residence near Helena. When they arrived on the scene, deputies found Mark dead on his living room floor with a single gunshot wound in his chest. Following an investigation, Kelly was charged with deliberate homicide for Mark's death.

¶4     Mark's home, which he rented from his parents (the Luthers), consisted of a bedroom on one end connected by a long hallway to a living room and kitchen. Detectives determined that Kelly shot Mark in the living room. The bullet traveled through Mark's body into a living room wall, exited an adjacent wall in the hallway, and struck a bookcase.

Relevant to this appeal, the only property damage directly caused by the bullet was two small holes in the wood-paneled walls and a small defect in the bookcase.

¶5 Prior to Kelly's sentencing hearing, the State submitted an affidavit from the Luthers claiming $13,495 in damages to the property. The affidavit included a proposal from Team Builders, Inc., describing the necessary repairs as "[re-paneling] hallway, bedroom, living room and adjoining walls of kitchen . . . [Placing] new window, door, ceiling and floor trim." Neither the Luthers' affidavit nor the attached estimate provided a detailed or line-item accounting of the necessary repairs and associated costs. While stating his willingness to agree to a portion of the requested restitution, Kelly objected to the Luthers' request as unsupported by record evidence and constituting a "windfall" for the Luthers. Kelly did not, however, produce any evidence to refute the Luthers' estimate.

¶6 The District Court awarded the Luthers the full amount requested for repairs to the home. During its sentencing pronouncement, the District Court stated:

> The tricky one for me is the rental property repairs. It's difficult for me because there isn't, unfortunately, the itemization. There isn't itemization. There also isn't anything in the record, other than just complaining in that it's not itemized, in that it seems like it might be excessive, there isn't anything really to suggest this is wrong or there isn't anything from the contractor's proposal on, you know, a registered contractor who has estimated this is the work done. I did see the photos at trial, and I don't think it's unreasonable, there has to be some things done to get that place up to a saleable condition just because of the disorder and the mess caused by this incident.
>
> So I do think there's substantial evidence for it and I do think that it could be established in a civil action based on the evidence I have before me. So I am going to award $13,495 for that.

3

¶7    The appropriate measure of restitution is a question of law that we review for correctness. *State v. Aragon*, 2014 MT 89, ¶ 9, 374 Mont. 391, 321 P.3d 841. A district court's factual findings as to the amount of restitution owed will be disturbed only if they are clearly erroneous. *Aragon*, ¶ 9. A finding is clearly erroneous if "it is not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *State v. Spina*, 1999 MT 113, ¶ 12, 294 Mont. 367, 982 P.2d 421. Substantial evidence is evidence that a reasonable person could accept as sufficient to support a conclusion. *State v. Jent*, 2013 MT 93, ¶ 10, 369 Mont. 468, 299 P.3d 332 (citing *Johnston v. Palmer*, 2007 MT 99, ¶ 26, 337 Mont. 101, 158 P.3d 998). An inkling or mere scintilla of evidence is not sufficient to constitute substantial evidence. *Jent*, ¶ 10.

¶8    Kelly argues that the evidence in the case is insufficient to support the District Court's award of restitution. Evidence introduced by the State showed that the bullet fired by Kelly damaged two wall panels and a bookcase. The State provided no evidence showing why the damage caused by the bullet required repaneling the entire living room. Even if it was necessary to replace all of the panels in the rooms where the shooting occurred, Kelly points to the absence of evidence that the bedroom and kitchen also had to be repaneled. Kelly further argues that there was no evidence to show that the damages caused by the bullet necessitated replacing wall, door, and window trim throughout the home. Because the State did not submit sufficient evidence, Kelly argues, the District Court abused its discretion in its award of restitution.

4

¶9	In response, the State argues that the Luthers' affidavit and accompanying estimate constitute substantial evidence of the damage caused by Kelly's criminal conduct. Because Kelly failed to provide any evidence to the contrary, it was reasonable for the District Court to rely on the Luthers' affidavit. Despite damaging only two wood panels, the State argues, it is reasonable to assume that a contractor would need to replace the entirety of the paneling to achieve a matching result and that doing so would require installing all new trim. Because evidence showed that the kitchen shared common walls and had the same paneling as the living room, the State maintains that substantial evidence supported replacing all of the paneling.

¶10	A sentencing court must require the defendant to pay restitution to any victim in an amount "sufficient to fully compensate the victim[] for all pecuniary loss substantiated by record evidence to have been caused by the defendant's conduct." *State v. Cole*, 2020 MT 259, ¶ 11, 401 Mont. 502, 474 P.3d 323 (quoting *State v. Pierre*, 2020 MT 160, ¶¶ 12-13, 400 Mont. 283, 466 P.3d 494). Because pecuniary loss is "those damages that would be recoverable in a civil action," an award of restitution must be supported by a preponderance of the evidence. *Aragon*, ¶ 16 (citing *State v. Hilgers*, 1999 MT 284, ¶ 4, 297 Mont. 23, 989 P.2d 866). An award of restitution requires a causal nexus between the defendant's conduct and the victim's damages, which may be established "by implication from proof of the elements of the charged offense, upon victim affidavits included with a [presentence investigation], or upon other evidence presented at or incident to sentencing." *Pierre*, ¶ 13

(citing §§ 46-18-241(1), -242(1)(b), (2), MCA). The State bears the burden of proving the causal link between a defendant's conduct and the restitution claimed. *Pierre*, ¶ 13.

¶11    Victim testimony alone, if found credible by the district court, may be sufficient to support a restitution award. *See Aragon*, ¶ 14 (citing *State v. Kuykendall*, 2006 MT 110, 332 Mont. 180, 136 P.3d 983 (overruled on other grounds)). Such evidence, however, still must be sufficient to support the award. *Aragon*, ¶ 14. In *Aragon*, a criminal defendant crashed into a garage while driving under the influence of alcohol. *Aragon*, ¶ 4. The State introduced a victim loss statement that included an estimate of $3,270 in damages, including $2,950 to repaint the entire house to ensure a color match. *Aragon*, ¶ 6. The defendant's insurance company provided a repair breakdown indicating total repair costs of $1,359.14. *Aragon*, ¶ 6. The district court, relying on the victim loss statement, ordered the defendant to pay an additional $1,910.86—the difference between the victim's estimate and the amount covered by insurance. *Aragon*, ¶ 7. This Court reversed, concluding that the district court's award was not supported by substantial evidence. *Aragon*, ¶ 20.

¶12    As in *Aragon*, the State here presented only the victim's affidavit with the attached estimate. Neither included a line-item accounting of costs or explanations for why certain repairs were necessary, and no witnesses testified to the necessity of or reasoning for the quoted repairs. The State argues it is "reasonable to assume that it would not be possible for a contractor to obtain the same paneling that was on the wall" in the home, and it is "reasonable to expect that new trim would have to be placed over the new paneling." The State is incorrect, however, that its assumptions are sufficient to support a causal

6

connection between Kelly's criminal conduct and the estimated damages. *Aragon*, ¶¶ 14, 19. "[A]ssumptions, ballpark figures from friends, and purely speculative calculations are insufficient information upon which to make findings of fact." *State v. Passwater*, 2015 MT 159, ¶ 14, 379 Mont. 372, 350 P.3d 382 (citing *State v. Colluccio*, 2009 MT 273, ¶ 45, 352 Mont. 122, 214 P.3d 1282).

¶13 The State attempts to distinguish between the facts of this case, in which Kelly did not present his own estimate of damage to the home, and *Aragon*, where the defendant did. The State points the Court's attention instead to *Passwater*, in which we affirmed a restitution award that was primarily based on a life care plan estimating the lifetime costs associated with an amputation. *Passwater*, ¶¶ 5, 25. Noting that determining restitution awards may involve "some guess work," we observed that we will sustain an award if it is based on the best evidence available. *Passwater*, ¶ 20 (citing *State v. O'Connor*, 2009 MT 222, ¶ 14, 351 Mont. 329, 212 P.3d 276). The State's reliance on *Passwater* is misplaced. The life care plan admitted at Passwater's sentencing included a categorized line-item breakdown of estimates, which allowed the district court to carefully determine a proper restitution award. *Passwater*, ¶ 16. "The [p]lan included citations to scholarly works, industry materials, government handbooks, and pricing data" to substantiate each category of requested restitution. *Passwater*, ¶ 16. As noted above, the evidence presented by the State in this case includes no similar itemization or further explanation that would support the District Court's award here.

¶14   The State further relies on *Passwater* to argue that the evidence in this case is sufficient to sustain the District Court's decision because Kelly failed to present any contradictory evidence. *See Passwater*, ¶ 22. The absence of competing evidence, however, does not relieve the State of its burden to prove by a preponderance of the evidence the causal connection between the defendant's actions and the requested award. *Pierre*, ¶ 13.

¶15   Montana law does not constrain the Luthers to having a patched bullet hole in the walls of their rental property. An offender is responsible "for pecuniary victim losses . . . that are directly *or indirectly* caused by an offense he or she committed or is criminally accountable." *Pierre*, ¶ 12 (emphasis added) (citations omitted); *see also Jent*, ¶ 12 (explaining that restitution is not strictly limited to damages directly caused by the defendant's action) (citing *State v. LaTray*, 2000 MT 262, ¶¶ 12-14, 302 Mont. 11, 11 P.3d 116). As the District Court noted, "there has to be some things done to get that place up to a saleable condition." Replacing the panels and trim of the living room, kitchen, and bedroom reasonably may be necessary to achieve a satisfactory result. On the record here, however, no evidence supports such speculation or conjecture. The State failed to present evidence sufficient to prove a causal link between Kelly's criminal actions and the requested restitution. Without more, the Luthers' affidavit and the undelineated estimate do not constitute substantial evidence to support the award of restitution. *See Aragon*, ¶ 17. The District Court therefore erred in its award of restitution.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. Under settled law, when a district court's restitution order is not supported by substantial evidence, we remand to the trial court "to determine the correct amount of restitution to be imposed in accord with . . . applicable law." *Aragon*, ¶ 21 (internal quotation omitted). The District Court's order is reversed and this case is remanded for the court to determine the proper restitution amount.

/S/ BETH BAKER

We Concur:

/S/ JIM RICE
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON