DA 15-0734

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 289

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

COREY ALLEN PATTERSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and For the County of Missoula, Cause No. DC 14-444
                      Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Elizabeth L. Griffing, Axilon Law Group, PLLC, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
            Attorney General, Helena, Montana

            Kirsten H. Pabst, Missoula County Attorney, Mac Bloom, Deputy County
            Attorney, Missoula, Montana

Submitted on Briefs:  October 12, 2016

Decided:  November 15, 2016

Filed:

_____
                          Clerk

FILED

11/15/2016

Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0734

Justice Jim Rice delivered the Opinion of the Court.

¶1 Corey Allen Patterson (Patterson) appeals from the judgment for conviction of burglary entered against him by the Fourth Judicial District Court, Missoula County, challenging the amount of restitution he was ordered to pay.

¶2 We affirm, and address the following issue:

*Did the District Court err in determining the amount of restitution?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In September and October of 2013, Patterson and Jesse Alma King (King) broke into storage units in Missoula. They stole firearms, ammunition, gun cases, archery equipment, and other miscellaneous items. Ralph Tracy (Tracy), one of the victims, reported that 16 firearms were stolen. Brian Rogers (Rogers), a second victim, reported 12 firearms were stolen. During the investigation, firearms belonging to Tracy and Rogers were recovered from various pawn shops and from Patterson's sister, who did not know they were stolen. Patterson and King were each charged with two counts of burglary.[1]

¶4 Plea agreements were discussed, but were not agreed upon. On May 5, 2015, King and Patterson each entered open guilty pleas on two counts of burglary. A hearing on restitution was conducted, at which the District Court was advised that the parties had agreed to restitution in the amount of $23,762. A minute entry in the District Court case

---

[1] Patterson's and King's cases proceeded together, and they were held jointly and severally liable for $28,592 in restitution. King's case has also been appealed, but has not yet been briefed. *State v. Jesse Alma King*, Cause No. DA 15-0735.

register regarding the amount of restitution noted the defendants would be jointly and severally liable, but did not include an allocation to particular costs. Following the hearing, the District Court ordered the preparation of a Presentence Investigation Report (PSI), which was filed on September 1, 2015. The PSI proposed a higher restitution amount and included a letter and spreadsheet from Tracy detailing his claims, along with a new $1,300 claim from Cash One Pawn.

¶5 At the sentencing hearing, the parties discussed the additional $1,300 claim from Cash One Pawn. Patterson questioned the $1,300 claim and pointed out that a restitution amount had previously been determined. The State responded that Cash One Pawn's restitution request was received after the parties had agreed to the $23,762 amount and, because the pleas were open, the additional restitution was a matter of the District Court's discretion. The District Court expressed a concern that the law required it to consider the request and, ultimately, the parties agreed that the $1,300 was appropriate for restitution.

¶6 Also, during the hearing, an attorney for Tracy asked to be heard. Tracy had not been part of the negotiations between the State and the defense and wanted to present his restitution request. The District Court ruled it would hear the request. Tracy testified and was cross-examined, explaining that he lived in Nevada and had traveled to Montana for the sole purpose of searching for his stolen property. Tracy stated that he had spent a considerable amount of time driving to and checking pawn stores around Montana, including shops in Missoula, Butte, Great Falls, Helena, and Kalispell. Tracy presented a spreadsheet itemizing his claims. It included the amount of time (84 hours) he had spent

3

searching, his lost wages, travel expenses, damage to the firearms, and miscellaneous expenses, totaling $5,039.94, which are challenged on appeal by Patterson.[2]

¶7 Patterson objected to Tracy's restitution request. The sentencing hearing was continued to give the defense additional time to analyze and respond to the restitution requests. At the continued hearing, the District Court concluded that all of Tracy's requested restitution amounts should be included in the restitution total. As part of his sentence, Patterson was ordered to pay, jointly and severally with King, $28,592 in restitution.

¶8 On appeal, Patterson challenges the restitution ordered for Tracy's lost wages, damages to the firearms, mileage expenses, and copying costs.

**STANDARDS OF REVIEW**

¶9 A criminal sentence is reviewed for legality. *State v. Simpson*, 2014 MT 175, ¶ 8, 375 Mont. 393, 328 P.3d 1144 (citing *State v. Benoit*, 2002 MT 166, ¶ 18, 310 Mont. 449, 51 P.3d 495). We review the imposition of criminal sentences to determine if they are statutorily authorized. *State v. Henderson*, 2015 MT 56, ¶ 13, 378 Mont. 301, 343 P.3d 566 (citing *State v. Thorpe*, 2015 MT 14, ¶ 7, 378 Mont. 62, 342 P.3d 5).

---

[2] Tracy's total request was as follows:

| $2,520.00 | Wages lost while pursuing stolen property |
| $1,500.00 | Damage to returned personal property |
| $600.00 | Mileage for driving from Nevada to Missoula to search for stolen property |
| $410.00 | Mileage for driving around Montana searching for stolen property |
| $9.94 | Copying costs |
| **$5,039.94** | **Total** |

Restitution cases create mixed questions of fact and law. Upon appeal, we review these mixed questions *de novo*. *State v. Cerasani*, 2014 MT 2, ¶ 11, 373 Mont. 192, 316 P.3d 819 (citing *State v. Warclub*, 2005 MT 149, ¶ 21, 327 Mont. 352, 114 P.3d 254). Factual findings regarding the measure of restitution are reviewed under the clearly erroneous standard. *State v. Passwater*, 2015 MT 159, ¶ 9, 379 Mont. 372, 350 P.3d 382 (citing *State v. Aragon*, 2014 MT 89, ¶ 9, 374 Mont. 391, 321 P.3d 841); *State v. Barrick*, 2015 MT 94, ¶ 11, 378 Mont. 441, 347 P.3d 241 (citing *State v. O'Connell*, 2011 MT 242, ¶ 7, 362 Mont. 171, 261 P.3d 1042). Factual findings are clearly erroneous if they are not supported by substantial evidence. *Barrick*, ¶ 11 (citing *O'Connell*, ¶ 7). Conclusions of law regarding the measure of restitution are reviewed for correctness. *Barrick*, ¶ 11 (citing *State v. Pritchett*, 2000 MT 261, ¶ 18, 302 Mont. 1, 11 P.3d 539).

**DISCUSSION**

¶10 *Did the District Court err in determining the amount of restitution?*

¶11 Both parties cite to *Barrick* in support of their arguments. In *Barrick*, we considered whether the victims' lost wages incurred in cooperating in Barrick's prosecution could be properly ordered to be repaid as restitution. *Barrick*, ¶ 16. Because the unpaid wages were neither an out-of-pocket expense under § 46-18-243(1)(d), MCA, nor a damage that the victims could recover "in a civil action arising out of the facts or events" of the crime under § 46-18-243(1)(a), MCA, we held that the wages were not properly assessed as restitution under § 46-18-243, MCA. In doing so, we analyzed

5

substantive civil law and, based upon the conversion statute,[3] concluded that recoverable losses for conversion, an applicable civil claim, included only the value of the converted property and compensation for "the time and money properly expended in pursuit of the property." *Barrick*, ¶ 23. We thus denied the claim for lost wages incurred by the victims in cooperating in the litigation of the case. *Barrick*, ¶ 24.

¶12 Regarding Tracy's $2,520 lost wages claim, Patterson argues that *Barrick* did not definitively hold that lost wages incurred in pursuit of converted property are recoverable, but rather noted some uncertainty in the law. Patterson notes that Montana's conversion statute, § 27-1-320, MCA, was drafted based on the Field Civil Code and that both California and North Dakota have similar statutes also originating from the Field Civil Code, leading to his citation of *Gladstone v. Hillel*, 250 Cal. Rptr. 372 (Cal. App. 1988) and *Harwood State Bank v. Charon*, 466 N.W.2d 601 (N.D. 1991). In *Gladstone*, the conversion victim sought reimbursement of expenses actually incurred in preparation for litigation under Cal. Civ. Code § 3336(2) (LexisNexis 2016), as "fair compensation for the time and money properly expended in pursuit of the property." The victim's damages were denied. Similarly, in *Harwood*, a case we cited in *Barrick*, the North Dakota Supreme Court was asked to determine if attorney fees could be claimed under

---

[3] Section 27-1-320, MCA, Conversion of personal property.

    (1) The detriment caused by the wrongful conversion of personal property is presumed to be:

      (a) the value of the property at the time of its conversion with the interest from that time or, when the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict without interest, at the option of the injured party; and

      (b) a fair compensation for the time and money properly expended in pursuit of the property.

N.D. (2016) Cent. Code § 32-03-23(3), as "a fair compensation for the time and money properly expended in pursuit of property." The North Dakota Supreme Court held the fees could not be claimed.

¶13 In both *Gladstone* and *Harwood*, the expenses and fees requested by the conversion victims were deemed to have been incurred in the litigation against the wrongdoers, not as out-of-pocket expenses incurred to recover the property. *Gladstone*, 250 Cal. Rptr. at 381 ("The court held '[accounting expenses] . . . were incurred in preparation for litigation and not in pursuit of property.'"); *Harwood*, 466 N.W.2d at 605 ("[T]he phrase 'time and money properly expended in pursuit of the property' is not an express authorization of attorney's fees.").[4] We made the same distinction in *Barrick*. *Barrick*, ¶ 23 ("'[C]ourts have distinguished between time spent in pursuit of converted property,' which is generally compensable, 'and time spent in litigation,' which is generally not compensable."). This distinction is supported by the plain language of § 27-1-320, MCA, and we concur with the District Court that Tracy's lost wages, incurred in pursuit of his stolen property, are recoverable in a civil action for conversion, and are properly reimbursable as restitution for pecuniary loss under § 46-18-243(1)(a),

---

[4] Patterson cites *Gladstone* for the proposition that the Field Civil Code was archaic and that, when enacted, "the Legislature may have contemplated compensation for time spent searching the countryside in search of misappropriated livestock or other chattels." *Gladstone*, 250 Cal. Rptr. at 381. Based on this language, Patterson implies the effort and costs expended searching for stolen property may no longer be an appropriate measure of damages for civil conversion. However, we think the North Dakota Supreme Court's reading of *Gladstone* and other California decisions is more accurate, and places the *Gladstone* quote in the appropriate context of the general rule stated by those courts: "California courts say the purpose of the second element of damages for conversion—time spent pursuing the property—is meant to compensate for time spent to *recover the actual property*." *Harwood*, 466 N.W.2d at 605 (emphasis added).

7

MCA. The District Court found that Tracy's efforts to locate his property were expected and directly related to obtaining his firearms.

¶14 The same rationale applies to Tracy's mileage and copying costs. Tracy claimed $1,010 for driving to Montana from Nevada, as well as driving around Montana searching for his firearms. Tracy testified that none of this travel would have occurred had he not been directly engaged in pursuing and recovering his property, which the District Court found to be credible. He also claimed $9.94 in copying costs, which he would not have normally incurred. Tracy's mileage costs were reimbursable as a pecuniary loss under § 46-18-243(1)(a), MCA, and his copying costs under § 46-18-243(1)(d), MCA.

¶15 Tracy also sought $1,500 in restitution for damages to his recovered property. Tracy testified that his claim for $1,500 was "for [the] degradation and outright abuse of some of my firearms, which were all pristine and basically like new." Section 27-1-106(2), MCA, states that "[a]n injury to property consists [of] depriving its owner of [its] benefits . . . , which is done by . . . deteriorating . . . it." Likewise, the conversion statute permits recovery of "the value of the property at the time of its conversion." Section 27-1-320(1)(a), MCA. The District Court properly ordered this restitution.

¶16 Lastly, Patterson argues Tracy's claims were not supported by sufficient evidence. Substantial evidence is "more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Passwater*, ¶ 9 (citing *Aragon*, ¶ 9). As we stated in *Passwater*, evidence presented in favor of restitution must be substantiated in the record

"'such that a reasonable mind' could conclude that the award of restitution was warranted," and that such evidence had been presented there. *Passwater*, ¶ 15 (citing *Aragon*, ¶ 19; *State v. Coluccio*, 2009 MT 273, ¶ 45, 352 Mont. 122, 214 P.3d 1282 *overruled in part on other grounds by State v. Kirn*, 2012 MT 69, 364 Mont. 356, 274 P.3d 476). In *Passwater*, the District Court received: 1) a victim impact statement and affidavit claiming the amount of loss; and 2) a care plan with firm calculations. Here, the District Court received: 1) Tracy's testimony; 2) his written victim impact statement; and 3) an itemized spreadsheet with firm calculations to support his claims. Tracy calculated his mileage based on total miles traveled multiplied by $0.50 per mile, which was near the current IRS mileage rate, and found to be reasonable by the District Court. Tracy calculated his lost wages by multiplying the 84 hours he spent by $30 per hour. Finally, Tracy based his property damage claim on "rust, wood damage, [and] abrasions to [the] metal and wood finishes." Patterson did not specifically challenge the calculation of Tracy's claims, but instead argued that these amounts had already been incorporated into the original restitution figure of $23,762. However, Tracy's spreadsheet carefully itemized and accounted for a total restitution claim of $27,292, of which $5,039.94 was challenged on appeal. The District Court accepted all of Tracy's claims and added Cash One Pawn's $1,300 claim to arrive at $28,592, which was the total amount of restitution ordered.

9

¶17 The District Court did not err in granting Tracy's restitution requests for lost wages, mileage, copying costs, and personal property damage, which were all supported by substantial evidence.

¶18 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT